UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PENNYMAC LOAN SERVICES, LLC, | Case No. 3:16-cv-00504-MMD-VPC |
| Plaintiff, | ORDER |
| v. | |
| TOWNHOUSE GREENS ASSOCIATION, INC., THUNDER PROPERTIES, INC., GAYLE A. KERN, LTD d/b/a KERN & ASSOCIATES, LTD., | |
| Defendants. | |

**I.  SUMMARY**

This case concerns a homeowner association's ("HOA") foreclosure of property ("the Property") within its development pursuant to Nevada Revised Statutes Chapter 116. Before the Court are two motions filed by Defendant Gayle A. Kern, Ltd. dba Kern & Associates, Ltd. ("Kern"): (1) Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3), and NRS § 38.310 *et seq.* ("Motion") (ECF No. 40) and (2) Motion for Sanctions Pursuant to FRCP 11 ("Motion for Sanctions") (ECF No. 44). The Court has reviewed Plaintiff PennyMac Loan Services, LLC's ("PennyMac") respective responses (ECF Nos. 42, 45) and Kern's replies (ECF Nos. 43, 48). The Court held a hearing on Kern's motions on June 6, 2017 ("Hearing"). (ECF Nos. 52, 53.)

For the reasons discussed below, the Court grants Kern's Motion to Dismiss and denies Kern's Motion for Sanctions.

## II. BACKGROUND

### A. Statutory Framework

In 1991, the Nevada legislature created the HOA lien statute found in Nevada Revised Statute Chapter 116. *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 410 (Nev. 2014). The statute allows an HOA to place a lien on a residential unit within its common-interest community for any assessment levied against that residential unit.[1] *See* NRS § 116.3116(1) (2011).[2] Once the HOA places a lien on the residential unit, the statute makes the HOA's lien prior to all other liens and encumbrances on the unit, except for: (a) liens and encumbrances recorded before the recordation of the declaration that creates the HOA; (b) a first security interest on the unit recorded before the date where the assessment sought by the HOA became delinquent; and (c) liens for real estate taxes and other governmental assessments against the unit. *See* NRS § 116.3116(2). However, the statute creates a partial exception—an exception to the exception—regarding the priority of a first security interest, e.g., a mortgage, recorded before the date of an assessment delinquency:

> *The [HOA] lien is also prior to all security interests described in paragraph (b)* to the extent of any [maintenance and nuisance-abatement] charges incurred by the association on a unit pursuant to NRS 116.310312 and *to the extent of the assessments for common expenses* [i.e., HOA dues] based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien, unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien… *This subsection does not affect* the priority of mechanics' or materialmen's liens, or *the priority of liens for other assessments made by the association*.

---

[1] The statute defines "common-interest community" as "real estate described in a declaration with respect to which a person, by virtue of the person's ownership of a unit, is obligated to pay for a share of real estate taxes, insurance premiums, maintenance or improvement of, or services or other expenses related to, common elements, other units or other real estate described in that declaration." NRS § 116.021(1) (2011).

[2] Nevada Revised Statute Chapter 116 has been amended several times since 2011. In 2015, NRS 116.3116 was amended and reorganized. 2015 Nev. Stat. 1331, 1334. Unless otherwise indicated, references to NRS Chapter 116 are to the 2011 version of the statute because the foreclosure in this case occurred in August of 2013.

2

*SFR Investments*, 334 P.3d at 410-11 (citing NRS §116.3116(2)) (emphasis added in original). In other words, this statutory provision allows the HOA to split its lien into two pieces: a superpriority piece and a subpriority piece. The superpriority piece of the HOA's lien consists of the last nine months of unpaid HOA dues as well as maintenance and nuisance-abatement charges. *Id.* at 411. Pursuant to the statute, this superpriority piece is prior to a first deed of trust.[3]

The HOA foreclosure process, NRS §§ 116.31162 - 116.31168, requires an HOA to first notify the owner of the residential unit of the delinquent assessments. NRS § 116.31162(1)(a). If the owner does not pay within 30 days of this notice of delinquent assessment, then the HOA may record a notice of default and election to sell. NRS § 116.31162(1)(b). The homeowner must then be allowed 90 days to pay off the amount of the lien, including costs, fees and expenses incident to enforcement. NRS § 116.31162(1)(c). If the lien is not paid off in this time, then the HOA may proceed with the sale.

A security interest holder is entitled to notice only if it has notified the HOA, before the mailing of the notice of sale, of the existence of the security interest. NRS § 116.311635(1)(b)(2). Specifically, the HOA is required to provide not only the homeowner with notice of default and election to sell, but it must also notify "[e]ach person who has requested notice pursuant to NRS 107.090 or 116.31168(1)" and "[a]ny holder of a recorded security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest." NRS §§ 116.31163(1) - (2). If a holder of a recorded security interest encumbering the residential unit owner's interest has notified the HOA more than 30 days before the notice of default is recorded, the association "or other person conducting the sale" must mail by first-class mail a copy of the notice of default and election to sell within

---

[3]By contrast, the subpriority piece consists of all other HOA fees or assessments and is subordinate to the first deed of trust.

3

10 days of the notice being recorded. NRS § 116.31163(2). Absent a holder of a recorded security interest's compliance with these "opt-in" notice requirements, the HOA may proceed with a non-judicial foreclosure sale in the event that the homeowner has still failed to remedy the delinquent assessments.

### B. Relevant Facts

On August 8, 2016, PennyMac initiated this lawsuit against Townhouse Greens Association, Inc. ("Townhouse"), Thunder Properties, Inc. ("Thunder"), and Kern. (ECF No. 1.) The following facts are taken from the Complaint.

Around December 23, 1998, Maria E. Golding and Rosalyn Bracamontes-Acosta obtained a loan from U.S. Financial Mortgage Corp. for $78,379 ("the Loan"), secured by a deed of trust ("DOT") encumbering the Property which is located in the HOA. The DOT was eventually assigned to PennyMac, although it is unclear when this occurred.

On October 22, 2012, Townhouse recorded a notice of delinquent assessment lien in the amount of $2,766.[4] On February 19, 2013, Townhouse recorded a notice of default and election to sell to satisfy the delinquent assessment lien. The notice stated that the total amount due to Townhouse was $6,143.75 of which $3,593.75 was subject to foreclosure. The notice also indicated that the total amount included late charges, advances, attorney's fees and costs. On July 1, 2013, Townhouse recorded a notice of HOA sale, which was scheduled for August 8. The notice also stated that the amount due to Townhouse was $8,588.40, plus late charges, interest, any subsequent assessments, fee charges and expense.

On April 9, 2013, Bank of America, N.A. ("BANA"), the servicer of the Loan, requested a ledger from Townhouse in order to identify the superpriority amount owed to Townhouse. Townhouse refused. As a result, BANA and its counsel attempted to calculate the superpriority amount—the sum of nine months of common assessments—which they determined was $1,476. Around May 28, 2013, BANA remitted payment of

---
[4]The Complaint alleges that Townhouse performed the acts identified in this paragraph "through its agent Kern." (ECF No. 1 at 4-5.)

4

this amount to Townhouse in an attempt to satisfy the superpriority lien amount, but Townhouse refused to accept BANA's tender.

At the foreclosure sale held on August 8, 2013, Townhouse sold the Property to Thunder for a sale price of $8,751.

Kern was the law firm acting on behalf of Townhouse in attempting to collect the delinquent assessments owed to Townhouse and in foreclosing on the Townhouse's HOA lien.

PennyMac asserts three claims against Kern and Townhouse: (1) quiet title/declaratory judgment;[5] (2) breach of NRS § 116.1113; and (3) wrongful foreclosure. (ECF No. 1 at 6-13.) Kern seeks dismissal of all three claims. Because PennyMac does not allege that Kern has expressed an interest in the Property (nor has Kern itself espoused such an interest), the Court analyzes Kern's arguments in the context of PennyMac's claims for breach of NRS 116.1113 and wrongful foreclosure claims.[6]

**III.     MOTION TO DISMISS (ECF No. 40)**

    **A.     Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to

///

---

[5]PennyMac also asserts this claim against Thunder. (ECF No. 1.)

[6]NRS § 40.010 provides that where there are conflicting claims to real property, "[a]n action may be brought by any person *against another who claims an estate or interest in real property*, adverse to the person bringing the action[.]" Thus, a quiet title action claim must allege that a defendant asserts an interest in the property.

survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

**B.      Analysis**

Kern's Motion raises three arguments: (1) there is no basis for independent liability where Kern acted as the agent of the principal Townhouse (ECF No. 40 at 6); (2) Kern acted merely as the attorney for Townhouse in connection with the HOA foreclosure sale and therefore owed no duty to PennyMac or its predecessors (*id.* at 7-10); and lastly (3) PennyMac failed to comply with the mediation requirements found in NRS § 38.310 and therefore this Court has no subject matter jurisdiction over the case (*id.* at 10-12.) At the Hearing, Kern asked that a ruling on the third argument be deferred. The Court declines

///

to address the third argument as it finds that the first two arguments raised by Kern are dispositive. The Court will address Kern's second argument first.

### 1. Kern's Role as Attorney for Townhouse

Kern contends that it was acting solely as the attorney for Townhouse and that, in overseeing the foreclosure sale, it did not owe a duty to anyone other than its client, Townhouse. (ECF No. 40 at 8.) The acts that Kern allegedly performed as Townhouse's agent include: recording a notice of delinquent assessment lien (ECF No. 1 at 4); recording a notice of default and election to sell to satisfy the delinquent assessment lien (*id.*); recording a notice of the HOA sale (*id.*); refusing to provide a ledger from Townhouse to BANA (*id.* at 6); and refusing BANA's payment to satisfy the superpriority amount owned to Townhouse (*id.* at 5, 6).[7]

At the Hearing, PennyMac argued that these services do not constitute traditional legal services; rather, the services Kern performed did not require specialized legal skills or knowledge and were more akin to administrative tasks that could be performed by a lay person. The Court disagrees. First and foremost, Kern's work in connection with the HOA foreclosure sale requires knowledge of Nevada's statutory scheme for non-judicial foreclosure of an HOA lien as established in NRS Chapter 116. The fact that a lay person can also review the statute and implement the HOA foreclosure sale proceedings does not mean the same services performed by an attorney do not amount to legal services that may be rendered on behalf of a client. Moreover, attorneys often represent their clients in legal transactions that require them to perform various administrative tasks that

---

[7]The Court takes judicial notice of Exhibits 1-4 attached to Kern's Motion to Dismiss (ECF No. 40 at 15-26) as they are matters of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

These exhibits reflect that, in furtherance of the HOA foreclosure sale, Kern performed specific duties under the auspices of the attorney-client relationship: it filed the notice of delinquent assessment on behalf of Townhouse (*see id.* at 16 ("A Lien for amounts due and owing is claimed by [Townhouse] against the following described property")); it recorded the notice of default and election to sell (*see id.* at 19 ("Kern . . . as attorneys for Townhouse . . .is authorized by [Townhouse] to enforce the lien of sale")); it recorded the notice of HOA sale (*see id.* at 22 ("Kern . . . as attorney for [Townhouse] . . . will sell at public auction")); and it recorded the deed in foreclosure of assessment of lien (*see id.* at 25 ("Kern . . . as attorney for [Townhouse]")).

7

do not involve solely giving legal advice in effectuating those transactions (i.e., directing the recording of real property conveyance documents). Accepting PennyMac's argument would require the Court to scrutinize each task an attorney performs in a piecemeal fashion to determine whether an attorney's work falls within the purview of permissible legal services and, if not, to determine whether the attorney should be held liable to a third party for services that are not legal in nature. Such an approach would disrupt the attorney-client relationship, which defines an attorney's duty to the client and not to a third party.

PennyMac also argues that Kern was acting not as Townhouse's attorney but as the non-judicial foreclosing trustee who conducted the foreclosure sale. (ECF No. 42 at 5-6.) PennyMac relies on *Shannon v. ReconTrust Co.,* No. 3:11-cv-908-RCJ-WGC, 2012 WL 1695664, at *1 (D. Nev. May 11, 2012), to support its contention that as a trustee in a non-judicial foreclosure sale, Kern acted as the agent for both the trustor and beneficary. (*See* ECF No. 42 at 6.) However, *Shannon v. ReconTrust Co.* involved a non-judicial foreclosure sale executed under NRS § 107.080 *et seq.* where the trustee under a deed of trust initiated the foreclosure sale against a homeowner/mortgagor/trustor on behalf of the mortgagee/beneficiary. Comparison of the foreclosure of a statutorily created HOA lien to the foreclosure of a deed of trust is inapposite; a deed of trust establishes a triangular relationship whereby a trustee acts on behalf of a mortagagee/beneficiary and owes duties to the mortgagor/trustor under NRS § 107.080 *et seq.* By contrast, NRS § 116.3116 *et seq.* contemplates a unique situation whereby a non-judicial foreclosure sale is conducted by an HOA, as holder of a superpriority lien established by statute, against the interest of the owner of the residential unit who is delinquent in payment of HOA assessments and other fees. Nowhere in NRS §§ 116.3116 through 116.3117, which establishes the HOA superpriority lien and the foreclosure process, does the statute

///

///

///

8

mention a "trustee."[8] Thus, characterizing an entity performing an HOA foreclosure sale on behalf of an HOA as a "trustee" mischaracterizes the relationship established under NRS Chapter 116 between the HOA and the owner of a residential unit.[9]

Alternatively, PennyMac argues that "even if Kern were acting solely in its capacity as attorney . . . the Ninth Circuit has stated attorneys may be liable to a third party where it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others." (ECF No. 42 at 6 (citing *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*,[10] 991 F.2d 1501, 1506 (9th Cir. 1993) (internal citation omitted)).) Yet, the Complaint fails to identify any actions taken by Kern that amount to negligent service or advice provided to Townhouse. Instead, the Complaint alleges that PennyMac's and its predecessor's harm—i.e., Thunder taking the Property free and clear of the senior deed of trust (ECF No. 42 at 6)—resulted from Kern *and* Townhouse's failure to identify the superpriority amount of its lien for PennyMac's predecessor when they asked for it, to notify PennyMac's predecessor that their security interest was at risk, or to accept PennyMac's predecessor's attempt to tender the superpriority amount. (*See* ECF No. 1 at 12.) None of these assertions amounts to an allegation that Kern provided negligent advice or service to Townhouse. Nor do they support such an inference.

PennyMac also contends that Kern should not be dismissed from this case because attorneys can be held liable when acting as debt collectors on behalf of their clients. (*See* ECF No. 42 at 6.) While there are instances where courts have found

---

[8]The deed provided by Kern is entitled "Deed in Foreclosure of Assessment Lien" as opposed to a traditional deed of trust. (*See* ECF No. 40 at 25.) This lends further support to the HOA lien foreclosure statute contemplating a unique framework by which foreclosure sales occur.

[9]Even if Kern was the official trustee in the foreclosure sale, PennyMac fails to allege facts demonstrating that Kern owed a duty to PennyMac or to its predecessor in its role as trustee.

[10]This case draws on California law, where an attorney may be liable to a third party "where the third party as an intended beneficiary of the attorney's services, or where it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others." *Waggoner*, at 1506 (citing *Fox v. Pollack*, 226 Cal. Rptr. 532, 535 (1986)). Yet, as Kern points out, PennyMac does not contend that it is a third-party beneficiary of Kern's services as Townhouse's attorney. (ECF No. 40 at 8.)

9

attorneys to be subject to the Fair Debt Collection Practices Act ("FDCPA") in their role as debt collectors, *see, e.g., Calvert v. Alessi & Koenig, LLC*, Nos. 2:11-CV-00333-LRH-PAL, 2:11-CV-00411-LRH-PAL, 2:11-CV-00442-LRH-PAL, 2:11-CV-01004-ORH-PAL, 2013 WL 592906, at *7 (D. Nev. Feb. 12, 2013), this case does not involve allegations under the FDCPA. Moreover, in cases brought before this Court where attorneys have acted as debt collectors, the claims have been brought by consumers, not alleged third-party beneficiaries like PennyMac. *See, e.g., Roadhouse v. Patenaude & Felix, A.P.C.*, No. 2:13-cv-00560-GMN-CWH, 2015 WL 1691885 (D. Nev. Apr. 14, 2015).

Finally, PennyMac insists that Kern owes PennyMac a duty of good faith under NRS § 116.1113, which, according to PennyMac, imposes "a commercial reasonableness standard on foreclosure of association liens." (ECF No. 42 at 7.) Section 116.1113 provides: "Every contract or duty governed by [NRS Chapter 116] imposes an obligation of good faith in its performance or enforcement." NRS § 116.1113.

However, as Kern correctly noted, the Complaint fails to allege that PennyMac was in privity of contract with Kern (ECF No. 40 at 8), a point which PennyMac does not dispute. Instead, PennyMac contends that the contract which imposed upon Kern a duty to act in good faith is the HOA's covenants, conditions, and restrictions ("CC&Rs"). (ECF No. 42 at 7.) Yet, PennyMac does not allege that Kern is a party to the CC&Rs, nor does the Complaint mention that compliance with the CC&Rs is the basis for its claim for breach of NRS § 116.1113. The Court finds that PennyMac has not and cannot allege how Kern failed to act in good faith in enforcing a contractual duty that Kern purportedly owed to PennyMac under NRS Chapter 116.

Additionally, the Complaint fails to point to a specific statutory provision requiring that Kern, acting as foreclosure trustee for Townhouse, had a duty to PennyMac or its predecessor. (*See* ECF No. 1 at 11-12.) Instead, the Complaint alleges that Kern owed

///

///

///

PennyMac/its predecessor a duty to identify the superpriority amount of the HOA's lien,[11] to notify PennyMac/its predecessor that their security interest was at risk,[12] and to accept PennyMac's predecessor's payment of the superpriority amount. (*Id.* at 12.)

To the extent PennyMac argues NRS 116.1113 includes an "obligation of good faith and imposes a commercial reasonableness standard of foreclosure of association liens," which Kern breached (ECF No. 42 at 7), this argument is legally infirm.[13] While the sale price of the Property in this case may be commercially unreasonable—the Complaint alleges that the property was sold for less than 8 percent of the Property's fair market value (ECF No. 1 at 6)—the Nevada Supreme Court has not indicated that attorneys or entities acting on behalf of the HOA in overseeing the foreclosure sale may be held liable if the circumstances surrounding the foreclosure sale are found to be unfair. *See, e.g., SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408 (Nev. 2014) (quiet title action brought by purchaser of property at HOA foreclosure sale against HOA and mortgage lender); *cf. Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222 (D. Nev. 2013) (finding that the mortgage was not extinguished by the HOA foreclosure sale where attorneys were still a listed party to the quiet title action and never moved to be dismissed). Moreover, there are no allegations that Kern acted unfairly in executing the foreclosure sale. All of PennyMac's allegations of unfairness surround Kern's behavior *prior* to the foreclosure sale, specifically where Kern failed to identify the superpriority lien amount to PennyMac's predecessor and let them know their security interest was at risk or to accept their tender of the superpriority amount.

---

[11] It unclear where this duty stems from, as PennyMac acknowledges that NRS Chapter 116 "fails to provide [them] with a statutorily enforceable mechanism to compel an HOA to inform [them] of the sum of the HOA super priority amount." (ECF No. 1 at 8.)

[12] Yet, in its Complaint, PennyMac states that NRS §§ 116.31162 and 116.311635 "do not require than an HOA provide [them] with written notice of the sum that constitutes the super priority portion of the assessment lien." (ECF No. 1 at 8.)

[13] While the Complaint does not explicitly state that Kern owed PennyMac or its predecessor a duty to sell the property at a commercially reasonable price, the Complaint alleges that, "The foreclosure sale did not extinguish the Senior Deed of Trust because the sale was commercially unreasonable or otherwise failed to comply with the good faith requirement of NRS 116.1113[.]" (ECF No. 1 at 10.)

11

## 2. Kern's Role as Agent of Townhouse

The Complaint asserts that Townhouse performed the activities relating to the foreclosure sale "through its agent Kern." (*See* ECF No. 1 at 4-5.) Kern cited to this allegation to argue that only Townhouse, as principal, may be liable for any acts carried out by Kern within the scope of the agency relationship. (ECF No. 40 at 6.)

NRS § 116.31164(1) provides that an HOA foreclosure sale "may be conducted by the association, its agent or attorney, or a title insurance company or escrow agent." Thus, Kern may properly conduct the foreclosure sale of the Property as Townhouse's agent. PennyMac does not contend that Kern exceeded the scope of the agency relationship or rely on any purported act beyond Kern's role as Townhouse's agent. In fact, the Complaint alleges that Kern undertook the activities on behalf of Townhouse. PennyMac offers no authority in support of its proposition that both the principal (Townhouse) and the agent (Kern) may be held liable to PennyMac for Kern acting as the agent in performing the alleged acts to effectuate the foreclosure of the HOA lien on the Property.[14]

## IV. MOTION FOR SANCTIONS (ECF No. 44)

Kern claims that "[s]anctions are warranted against Plaintiff and/or its Counsel in this case" for "filing of a frivolous Compliant." (*Id.* at 2-3.) While the Court grants Kern's Motion to Dismiss, the Court does not find that PennyMac's claims against Kern are frivolous. There exists at least one case in the District of Nevada where the court implicitly held attorneys acting on behalf of an HOA to be a party to a claim for quiet title. *See, e.g., Bayview Loan Servicing, LLC, v. Alessi & Koenig, LLC et al.*, 962 F. Supp. 2d 1222 (D. Nev. 2013). Moreover, in another case where Kern was a party, the court found the claims—similar to those here—to be non-frivolous. *See Bank of New York Mellon v. Highland Ranch Homeowners Ass'n et.al.*, No. 3:16-cv-00436-RCJ-WGC (D. Nev. Dec. 6, 2016). For these reasons, the Court denies Kern's Motion for Sanctions.

///

---

[14] In fact, PennyMac did not address Kern's agency argument in its response brief. At the Hearing, PennyMac tried to analogize Kern's role as an agent of Townhouse to an employer-employee relationship, but the Court finds such analogy to be unpersuasive.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Kern's Motions.

It is therefore ordered that Kern's Motion to Dismiss (ECF No. 40) is granted and its Motion for Sanctions (ECF No. 44) is denied.

The Clerk is directed to enter judgment in favor of Kern in accordance with this Order.

DATED THIS 10th day of July 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE